**FAMILY PLANNING CLINIC, INC., Plaintiff,**

v.

**CITY OF CLEVELAND, OHIO, et al., Defendants.**

No. C82–2580.

United States District Court, N.D. Ohio, Eastern Division.

Oct. 2, 1984.

Bernard J. Berkman, J. Michael Murray, Berkman, Gordon, Murray & Palda, Cleveland, Ohio, Roy Lucas, Fairfax, Va., for plaintiffs.

John D. Maddox, Stuart A. Friedman, City of Cleveland Law Dept., Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

### I.

The above-captioned cause of action originated with plaintiff's efforts to open a free-standing medical facility in the City of Cleveland that would provide, among other things, abortion services. It is undisputed that, on September 10, 1982, an officer of Plaintiff Family Planning Clinic, . Inc. ("FPC") entered into a five-year lease on office space on the east side of Cleveland in the Young Medical Building, which is located at 11811 Shaker Boulevard. As part of said lease agreement, plaintiff is to pay its lessor a total of $98,894.00 in rent over the term of the lease.[1] The leased space has previously been used as a medical office.

On or about September 7, 1982, an officer of FPC, acting as plaintiff's agent, made an oral application to the Office of Public Health and Welfare for an abortion service license. That same day, plaintiff's agent forwarded to said Office a letter memorializing the request. In a letter from Jeffrey Comfort, Director of the Office of Public Health and Welfare, dated September 17, 1982, FPC was denied a license on the grounds that the site for the proposed clinic was in an area zoned to exclude free-standing abortion clinics and that FPC's "request to establish a free-standing abortion clinic to be located at 11811 Shaker Boulevard is inconsistent with current zoning laws...." In its license application, plaintiff expressly stated its intention to operate primarily to provide abortion services. The zoning provision on which Mr. Comfort relied in evaluating plaintiff's license request is Cleveland Cod. Ord.Sec. 337.10 ("Section 337.10").

Plaintiff FPC filed the above-captioned cause of action challenging the constitutionality of Section 337.10 as a consequence of having been denied a license to operate as an abortion clinic on its proposed site. Essentially, plaintiff asserts that Section 337.10 impermissibly interferes with a woman's fundamental right to seek and obtain an abortion. Plaintiff asserts that enforcement of Section 337.10 violates 42 U.S.C. § 1983, as well as the due process and equal protection clauses of the Fourteenth Amendment to the Constitution.

Named defendants to the above-captioned cause of action include the City of Cleveland, City Council members, Jeffrey Comfort, Director of the Office of Public Health and Welfare, Louis Civittollo, Commissioner of Assessments and Licenses, James Young, Director of Law for the City, George Voinovich, Mayor of the City, and all successors in interest to the named defendants. Defendants assert that the challenged ordinance imposes no burden upon that protected privacy right on which plaintiff bases its claim and, so, is not constitutionally defective.

### II.

As was the case in *West Side Women's Services v. City of Cleveland,* 573 F.Supp. 504 (N.D.Ohio 1983) (*"WSWS"*), defendants argue that Plaintiff FPC does not have the requisite *jus tertii* standing to pursue the claim that Section 337.10 unconstitutionally infringes a woman's right to seek and obtain an abortion. Defendants argue that the constitutional challenge may only be asserted by would-be female patients.

As a general rule, "one may not claim standing ... to vindicate the constitutional rights of some third party." (Citation omitted.) *Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 333 (5th Cir.1981). Courts impose such standing requirements in deference to the long-standing tenets that "courts should not adjudicate constitutional rights unnecessarily" and that "rights are most effectively as-

---

1. Plaintiff claims that it is still paying rent on the office space located in the Young Medical Building in fulfillment of its obligation under the terms of the lease agreement. The circumstances which precipitated the filing of the above-captioned cause of action are somewhat unique. Discovery engaged in prior to trial of the damages issue ought to include consideration of actions undertaken by both parties at or about the time the instant action was instituted, including plaintiff's efforts to mitigate its damages.

serted by those who can personally claim them." *Id.* However, "[i]n cases where these justifications are inapplicable, the general rule should be excepted and assertion of third party rights permitted." *Id.*

As this Court noted in *WSWS*, whether or not plaintiff may be granted *jus tertii* standing depends upon the nature of the relationship between plaintiff and the third party, the effect of the challenged restriction on the nonlitigant third party, and the ability of that nonlitigant third party to assert her own rights. *WSWS, supra*, 573 F.Supp. at 510–511. According to the court in *Friendship Medical Center v. Chicago Board of Health*, 505 F.2d 1141, 1145 (7th Cir.1974), *cert. denied sub nom. Chicago Board of Health v. Friendship Medical Center*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975), "[t]he initial inquiry in determining if the plaintiff [ ] [has] the requisite standing to maintain this action is whether [it has] alleged such a personal stake in the outcome of the controversy so as to assure that there exists 'concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" (Citations omitted.)

In its Complaint, plaintiff set out allegations that sufficiently illustrate its personal stake in the resolution of the above-captioned action to accord it *jus tertii* standing. *See* Plaintiff's Complaint, September 24, 1982, ¶¶ 22, 24, 26, 34, 40. As was the case with plaintiff in *Akron Center for Reproductive Health v. City of Akron*, 651 F.2d 1198, 1210–1211 (6th Cir. 1981), *aff'd in part and rev'd in part on other grounds*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), plaintiff in the above-captioned matter has suffered injury as a consequence of the enforcement of the challenged ordinance and, so, has the requisite financial and equitable interest in the outcome of the litigation challenging the ordinance. *See also Mahoning Women's Center v. Hunter*, 610 F.2d 456 (6th Cir. 1979) (The court pointed to plaintiff's financial interest in the invalidation of an ordinance regulating abortions as justification for its determination that plaintiff had *jus*

*tertii* standing to challenge the ordinance's constitutionality.)

Secondly, the third party's enjoyment of the privacy right that plaintiff wishes to assert is "inextricably bound up with the activity the [plaintiff] wishes to pursue." *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976); *See also Planned Parenthood of Minnesota v. Citizens for Community Action*, 558 F.2d 861, 865 n. 3 (8th Cir.1977) (The court, according plaintiff clinic *jus tertii* standing, noted that the right of a woman to seek an abortion is "inextricably bound up" with the ability of plaintiff clinic to provide such a service.) Enforcement of the challenged ordinance to exclude free-standing clinics operating primarily to provide abortion services undermined plaintiff's attempt to secure an operating license to open an abortion service at the location plaintiff had leased prior to applying for the license. As was the case in *WSWS*, plaintiff is not attempting to assert the rights of individuals with whom it is only marginally involved. *See Friendship Medical Center, supra*, 505 F.2d at 1147.

Finally, the third factor to be considered when determining whether a plaintiff has standing to assert certain claims is the ability of any nonlitigant third party to assert her own privacy right claim. Any number of obstacles exist to prevent a woman seeking an abortion from asserting her right to do so by way of litigation. The expense of litigating such a challenge is one obvious deterrent. In *Carey, infra*, 431 U.S. at 684 n. 4, 97 S.Ct. at 2015 n. 4, the Supreme Court noted that perhaps the most compelling obstacle is a third party's desire to protect "the very privacy of her decision from the publicity of a court suit."

For the foregoing reasons, the Court must reject defendants' challenge to plaintiff's *jus tertii* standing. In the instant case, the relationship between the challenged ordinance, the injury to plaintiff and plaintiff's would-be patients, and the purpose and effect of the ordinance naturally compel plaintiff to fully and aggressively litigate the privacy claim of women who

would use its abortion service. *See Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 333 (5th Cir.1981). The challenged ordinance, aimed at, and operating directly on, plaintiff is of a continuing nature, and has resulted in plaintiff's inability to offer services to would-be patients. Given the nature of the relationship between plaintiff and the third party nonlitigants, the ability of those nonlitigants to assert their own claims, and the actual and potential financial loss to plaintiff if it is not permitted to assert the nonlitigants' privacy right, the Court must conclude that Plaintiff FPC is "entitled to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should its constitutional challenge fail." *Carey v. Population Services International,* 431 U.S. 678, 684, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675 (1977), quoting *Craig v. Boren,* 429 U.S. 190, 195, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976).

### III.

The area in which plaintiff proposed to open and operate FPC as a free-standing abortion clinic is zoned as a "residence-office district." The stated purpose of residence-office districts is "to provide a zoning use district where apartment houses and administrative and professional office buildings and similar uses may be located as compatible land uses." Cleveland Cod. Ord.Sec. 337.09. The current version of Cleveland Cod.Ord.Sec. 337.10(c)(2), as amended by Ordinance No. 1871–73, was passed by the Cleveland City Council on September 24, 1973. It delineates the permitted uses in a residence-office district.[2] Nowhere in the City's Codified Ordinances are the terms "professional office", "health

facility", "medical office", "medical center", or "clinic" defined.

The Court will evaluate plaintiff's Motion for Entry of Judgment and Defendants' Motion to Dismiss by applying the same analysis employed in its recent decision in the related case *West Side Women's Services, supra,* 573 F.Supp. 504. The question endemic to both parties' latest motions is whether the Court's constitutional analysis in *WSWS* applies equally to the ordinance challenged by plaintiff in the instant matter in such a way that *WSWS* is dispositive of the constitutional challenge advanced by Plaintiff FPC.

### A.

In evaluating the constitutionality of Section 337.10, the Court must first determine the nature of the constitutional right involved. The Supreme Court in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), found that the fundamental constitutional right of privacy includes the right to be free from impermissibly burdensome governmental regulations that bear on a woman's right to seek and obtain an abortion. Since *Roe,* courts have consistently recognized a woman's right to terminate her pregnancy as a fundamental one. *See, e.g., Maher v. Roe,* 432 U.S. 464, 471, 97 S.Ct. 2376, 2381, 53 L.Ed.2d 484 (1977); *Akron Center for Reproductive Health, supra,* 651 F.2d at 1202; *Friendship Medical Center, supra,* 505 F.2d at 1151. In *Carey v. Population Services International,* 431 U.S. 678, 684, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675 (1977), the Supreme Court noted that:

Although "[t]he Constitution does not explicitly mention any right of privacy,

---

2. Section 337.10 reads in pertinent part as follows:

§ 337.10 *Permitted Buildings and Uses in Residence-Office Districts.*

In a Residence-Office District the following buildings and uses are permitted, provided that no sales, display or warehousing of merchandise shall be permitted on the premises:

\* \* \* \* \* \*

(c) The following, if located at least fifteen feet from the lot lines where the adjoining premises are not used for similar purposes:

\* \* \* \* \* \*

(2) Hospitals, sanitariums, nursing, rest or convalescent homes, homes for the aged and *clinics provided that none of these uses are operated primarily for abortions,* the care of contagious diseases, the insane or feebleminded, epileptics, drug or liquor patients.

\* \* \* \* \* \*

(Emphasis supplied.)

the Court has recognized that one aspect of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment is "a right of personal privacy, or a guarantee of certain areas or zones of privacy." (Citation omitted.) Based on long-established precedent, inasmuch as Section 337.10 impacts on the abortion decision, constitutional analysis of Section 337.10 involves the evaluation of that ordinance's impact on what has been recognized as a fundamental right.

#### B.

■ Having concluded that the right which constitutes the basis of plaintiff's claim is a fundamental one, the Court must now determine whether the challenged ordinance significantly impacts on that right. That is, the Court must determine whether the ordinance has a "legally sufficient impact" on the right of a woman, in consultation with her physician, to choose to terminate her pregnancy. If the impact is legally insufficient, the Court need only satisfy itself that the impact is rationally related to a legitimate state interest to conclude that the ordinance in question passes constitutional muster. However, if the burden the ordinance imposes is more than *de minimus,* the Court must consider whether Section 337.10 can stand up under strict scrutiny. That is, the Court must determine whether the infringement is justified by a compelling governmental interest and whether the burden imposed is the least restrictive alternative. *Akron Center for Reproductive Health, supra,* 651 F.2d at 1204; *WSWS, supra,* 573 F.Supp. at 517–519.

■ Several courts, when faced with constitutional challenges to ordinances that regulated the operation of abortion services, have held that such laws are subject to heightened scrutiny. *See, e.g., Deerfield Medical Center, supra,* 661 F.2d 328; *Planned Parenthood, supra,* 558 F.2d 861. "[T]he standard of review is determined by the nature of the right assertedly threatened or violated rather than by the power being exercised or the specific limitation imposed." (Citation omitted.) *Schad v. Borough of Mount Ephraim, supra,* 452

U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). In brief, Section 337.10 amounts to a state-created obstacle to the abortion decision. Its effect on the fundamental right embodied in that decision is more than *de minimus.* Since it significantly impinges on what has been recognized as a constitutional right, the Court must now apply the strict scrutiny test to the matter at hand.

As the Supreme Court stressed in *Maher, supra,* 432 U.S. at 473–474, 97 S.Ct. at 2382–2383. *Roe* "did not declare an unqualified 'constitutional right to an abortion....' Rather, the right protects the woman from unduly burdensome interference with her freedom to decide whether to terminate her pregnancy." As it did in *WSWS,* this Court finds that the challenged ordinance imposes a sufficiently substantial burden on a woman's right to seek and obtain an abortion to necessitate the application of the strict scrutiny test for purposes of determining whether the ordinance is constitutional. Since its enactment on September 27, 1973, Section 337.10 has precluded the establishment of hospitals or clinics in residence-office districts wherein abortion services would constitute the primary activity. On its face, the ordinance limits women in their choice of abortion facilities. Moreover, although a strict reading of the ordinance would seem to suggest that an individual physician could maintain an office and provide abortion services as a primary part of his practice in a residence-office district, other factors left unaccounted for by defendants in the instant case indicate that, in fact, a sole practitioner conceivably would be disinclined or unable to secure a license to perform abortions. At oral argument, defendants noted that there are licensing requirements an individual physician must fulfill before he is allowed to open a practice devoted primarily to provide abortion services. Defendants also acknowledged that, in fact, no individual physicians have been licensed to operate practices primarily to provide abortion services in the City of Cleveland. (Tr. 3–4.) Moreover, inasmuch as the City's ordinances do not include a definition of "clinic", there is no way for a

physician seeking to open an office in a residence-office district at which he primarily would offer abortion services to know whether his office would be considered a clinic or a sole practice for purposes of licensing and the imposition of zoning restrictions. (Tr. 4–5.) Conceivably, the vagueness of the challenged ordinance, as it relates to the kind of medical facilities that may lawfully devote the primary portion of their operations to abortion services, serves as a deterrent to individual physicians seeking to establish practices devoted primarily to abortion services in residence-office districts. The deterrent effect of the vagueness of Section 337.10, as well as related City ordinances regulating the operation of medical facilities, on the establishment of sole practices primarily offering abortion services, when combined with Section 337.10's strict prohibition against the operation of hospitals and clinics primarily for such services, insure that a woman's range of choices with regard to abortion services is substantially limited.[3]

In contrast to the *Maher* scenario, legislators in the instant case did more than decline to remove a preexisting obstacle with the passage of Section 337.10. They created one that had not existed previously, as evidenced by the fact that there were free-standing abortion clinics in the City's residence office districts before the challenged ordinance was amended in 1973 to prospectively exclude them.

■ The challenged ordinance also amounts to a direct interference with the physician-patient relationship. *See City of Akron, supra,* 103 S.Ct. at 2493–2494. Section 337.10 impacts on the physician-patient relationship in a manner similar to that of the ordinance that this Court struck down as unconstitutional in *WSWS*. Under Section 337.10, a physician practicing out of a clinic or hospital in a residence-office district, who may be willing to perform an abortion at the behest of a patient, would be prevented from lawfully so doing where performance of an abortion would mean that the facility primarily offered abortion services in contravention of the ordinance. Consequently, as did the challenged ordinance in *WSWS*, Section 337.10 interferes with physicians' exercise of their medical judgment.

**3.** Arguably, Section 337.10 could also fail under a vagueness challenge. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined .... [W]e assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The Supreme Court has remarked on the adverse impact a vague law has on due process rights:

[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. (Citation omitted.)

*Cramp v. Board of Public Instruction,* 368 U.S. 278, 287, 82 S.Ct. 275, 280, 7 L.Ed.2d 285 (1961). Both the *Grayned* and *Cramp* Courts emphasize that where, as in the instant case, the challenged law impinges on individual rights affirmatively protected under the Constitution, statutory vagueness is particularly odious. The *Cramp* Court noted that

The vice of unconstitutional vagueness is further aggravated where, as here, the statute in question operates to inhibit the exercise of individual freedoms affirmatively protected by the Constitution.

*Cramp, supra,* 368 U.S. at 287, 82 S.Ct. at 280. The *Grayned* Court specifically addressed the inhibitory impact of vaguely worded law on the enjoyment of First Amendment freedoms:

[W]here a vague statute "abut[s] upon sensitive areas of basic First Amendment freedom," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone" ... "than if the boundaries of the forbidden areas were clearly marked."

*Grayned, supra,* 408 U.S. at 109, 92 S.Ct. at 2299. The *Grayned* Court added that

Where First Amendment interests are affected, a precise statute evincing a legislative judgment that certain specific conduct be ... proscribed, ... assures us that the legislature has focused on the First Amendment interests and determined that other governmental policies compel regulation. (Citations omitted.)

*Id.* at 109 n. 5, 92 S.Ct. at 2299.

Those individuals obliged to comply with Section 337.10 are uncertain as to what activities they may lawfully engage in under it. Inasmuch as the ordinance affects First Amendment privacy rights, its equivocal language is unacceptably vague.

Section 337.10 does not survive a constitutional challenge simply because the burden it imposes affects only hospitals, clinics and physicians in residence-office districts. As this Court observed in *WSWS*, an ordinance which interferes with the exercise of a woman's fundamental abortion right will not be able to withstand a constitutional challenge simply because it is geographically limited in scope. The Supreme Court, in its evaluation of a First Amendment challenge to another zoning ordinance in *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 76–77, 101 S.Ct. 2176, 2186–2187, 68 L.Ed.2d 671 (1981), noted that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." (Citation omitted.) As this Court noted in *WSWS*, "[t]he question is not whether the activity may be engaged in elsewhere, but whether it was constitutional to restrict it in the manner chosen by defendants." *WSWS, supra*, 573 F.Supp. at 518. As was the case in *WSWS*, enforcement of the ordinance in question eliminated a potential clinic alternative for women, whether or not other facilities inside or outside of residence-office districts also offered abortion services. If such ordinances were allowed to survive constitutional challenge merely because their infringement was geographically limited, "nothing would prevent the City from passing future ordinances effectively banning abortion clinics from other zoned areas.... So long as abortions were available at several other locations in the City, defendants' argument would go, such ordinances would be constitutional." *Id.* at 518–519 n. 13. To accept defendants' argument would grant City legislators license to whittle away at abortion services located in the City through the enactment of other restrictive zoning ordinances.

### C.

■ The court in *Friendship Medical Center, supra*, 505 F.2d at 1150, noted that "[u]nder traditional analysis, exercise of the police power need only bear some rational relationship to a legitimate governmental interest," but that "where funda-mental rights are involved regulations limiting these rights may be sustained only by a 'compelling state interest.'" (Citations omitted.) In the instant case, plaintiff challenges a zoning ordinance. An ordinance such as the challenged one has to find its justification in some aspect of the police power asserted to protect the public welfare. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926). Although the power of the state to pass laws in the exercise of the police power is broad, it must be exercised so as to not unnecessarily impinge upon protected fundamental rights such as the privacy right asserted by plaintiff in the instant matter:

> The authority of the State to pass laws in the exercise of the police power, having for their object the promotion of the public health, safety and welfare is very broad .... But it is equally well established that the police power, broad as it is, cannot justify the passage of a law or ordinance which runs counter to the limitations of the Federal Constitution
> .... 

*Buchanan v. Warley*, 245 U.S. 60, 74, 38 S.Ct. 16, 18, 62 L.Ed. 149 (1917). As the Supreme Court remarked in *Schad, supra*, 452 U.S. at 68, 101 S.Ct. at 2182, "as is true of other ordinances, when a zoning law infringes upon a protected activity, it must be narrowly drawn and must further a sufficiently substantial government interest."

■ As was the case with the ordinance this Court declared unconstitutional in *WSWS*, Section 337.10 treats free-standing abortion clinics differently from other medical enterprises operating in residence-office districts in the City of Cleveland. In the instant case, the challenged ordinance prospectively banned the establishment of free-standing abortion clinics, as well as the operation of full-fledged hospitals and general service clinics operating primarily to provide abortion services. In evaluating the constitutionality of such a distinction, this Court must examine the nature of the distinction, as well as defendant's justifica-

tion for it. *Maher v. Roe*, 432 U.S. 464, 473, 97 S.Ct. 2376, 2382, 53 L.Ed.2d 484 (1977). To pass constitutional muster, a zoning ordinance must be as narrowly drawn as possible and advance a substantial governmental interest even where the challenged regulation impinges on a fundamental right only incidentally or in a small number of cases. *Schad, supra*, at 68–69 n. 7, 101 S.Ct. at 2182, 2183 n. 7.

Defendants argue that since, by its very terms, Section 337.10 does not absolutely prohibit hospitals or clinics from performing abortions in residence-office districts and has no effect whatsoever on individual physicians with abortion practices in residence-office districts, any distinction made by legislators in enacting the challenged ordinance between abortions and other medical services is so negligible as to not amount to a constitutional infringement. Moreover, Defendants also rely on the fact that abortion services are available elsewhere in the City, as well as within residence-office districts, and, particularly, that the two preexisting free-standing clinics near the proposed site of plaintiff's clinic were allowed to continue operations after the enactment of Section 337.10 in 1973, to support its claim of constitutionality.

Defendants have advanced few reasons to justify imposing a burden on a fundamental right by way of the challenged ordinance. None of the justifications advanced withstand strict scrutiny. In their brief in support of their motion to dismiss, defendants seem to suggest that a sufficient justification for the burden is a need to protect the residential character of contiguous residence districts:

> [Residence-office Districts] are intended to permit "related uses to function effectively" but with the specific injunction of "... protecting the residential amenities of adjoining Residence Districts."

Defendant's Brief in Support of Their Motion to Dismiss, November 18, 1983, p. 3. As was the case in *WSWS*, defendants have presented no convincing evidence as to how the existence of free-standing clinics would threaten the residential character of residence-office districts and neighboring residence districts. The City has failed to demonstrate how free-standing abortion clinics or hospitals operating primarily to provide abortion services would be any more disruptive to any contiguous residential areas than would any of the other permitted uses authorized by Section 337.-10. Moreover, the City offers no reasoning to justify the conclusion that physicians in sole practice who, under Section 337.10, are permitted to primarily or exclusively offer abortion services in residence-office districts, are less disruptive of neighboring residence districts than free-standing clinics would be. The logic behind a prospective exclusion of clinics or hospitals operating primarily to perform abortions when a similar medical facility that devotes fifty percent or less of its operation to such services lawfully may do so is lost on the Court. Defendants have not, and can not, demonstrate how the impact on the residential character of a zoned area of hospitals or clinics that devote fifty percent of their operations to abortion services differs from the impact of similar facilities that devote over fifty percent of their operations to such services. The fact that Section 337.10 imposes restrictions on the operation of facilities for the care of alcoholics, drug abuse patients, and the mentally handicapped strongly suggests that, indeed, the 1973 version of the challenged ordinance was enacted to preserve the residential character of the neighborhood. However, defendants have failed to address the questions of whether the same objectives are served by way of the restrictions imposed on facilities serving the former type patients and on those facilities primarily providing abortion facilities, and of whether those objectives ought to be pursued. (Tr. 19–22). Finally, as the Court observed in *WSWS, supra*, 573 F.Supp. at 522, "[t]he variety of uses permitted in residential areas belies the purported objective of protecting such areas." The mere fact that there are so many permissible nonresidential uses in residence office districts weakens any preservation of residential character justification. (Tr. 7–8.)

In support of their preservation of residential character claim, defendants' point

out that, unlike the ordinance the Court found unconstitutional in *WSWS*, Section 337.10 was not passed on the eve of the opening of plaintiff's facility. They argue that its date of passage further bolsters their claim that they did not act with the intention of undermining constitutional rights, but to protect surrounding neighborhoods. They place great emphasis on the fact that, unlike the ordinance that was struck down in *WSWS*, Section 337.10 was not passed on the eve of the opening of the complaining party's abortion facility. *Roe*, the seminal Supreme Court opinion declaring that a woman's right to an abortion was a fundamental one, was decided on January 22, 1973. Shortly after the Supreme Court's pronouncement, the two free-standing clinics that were providing abortion services near the proposed site of plaintiff's clinic at the time the instant cause of action was instituted began operating. On September 27, 1973, Section 337.10 was amended to include "abortion services" as services which could not constitute the primary part of the operation of any hospital or clinic located in a residence-office district. Conceivably, the City Council's efforts to so amend Section 337.10 so soon after *Roe* suggests that defendants sought to avert the opening of any additional abortion clinics in one type of zoning district in the City. With no legislative history relative to the passage of the 1973 amendment, any observations as to the intent of the City Council in amending Section 337.10 to exclude abortion clinics are speculative. (Tr. 23.) However, circumstances surrounding the enactment of the amendment to the challenged ordinance reasonably may be interpreted to support plaintiff's position that defendants' intent was to impose restrictions on the fundamental abortion right as readily as it could be interpreted to mean that there was no unlawful purpose in the passage of the amendment.

Finally, any argument that Section 337.10 lawfully embodied a value judgment favoring childbirth over abortion must also fail. Defendants have offered no evidence of such a judgment. Nor have they demonstrated in what manner the challenged ordinance indeed would promote childbirth. (Tr. 6.) What is more, even a law with the stated purpose of promoting childbirth over abortion cannot withstand scrutiny if it impinges on the fundamental abortion right and is a state-created obstacle. *See Maher*, *supra*, 432 U.S. 464, 97 S.Ct. 2376.

### III.

In sum, the analysis that this Court employed in *WSWS* is applicable to the instant matter. Plaintiff has standing to assert its own claims and the *jus tertii* claims of its would-be female patients. The challenged ordinance is subject to strict scrutiny because it impinges on a fundamental right and its effect on that right is more than *de minimus*. Defendants have failed to offer adequate justification for the burden Section 337.10 imposes on a woman's right to seek an abortion. Although this Court respectfully disagrees with the extent to which the Supreme Court and a number of the circuits have expanded this fundamental right, it is compelled to faithfully apply the law, as it stands, to the case at hand. Section 337.10 impermissibly interferes with a woman's right to seek and obtain an abortion. Because the ordinance is unconstitutional, it must fail. Plaintiff was unlawfully denied a permit to open its clinic at its intended site. Defendants' motion to dismiss is hereby denied. Plaintiff's motion for entry of partial summary judgment is hereby granted.

IT IS SO ORDERED.