Planned Parenthood v. Manchester, NH  CV-01-064-M   04/27/01
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Planned Parenthood of Northern New
England, and 24 Penacook Street, LLC,
     Plaintiffs

     v.                                    Civil No. 01-64-M
                                           Opinion No. 2001 DNH 083
City of Manchester, New Hampshire,
     Defendant


**MEMORANDUM ORDER**


     Plaintiffs, Planned Parenthood of Northern New England

("PPNNE") and 24 Penacook Street, LLC ("Owner"), have sued the

City of Manchester, New Hampshire, and its Zoning Board of

Adjustment ("ZBA"), claiming that the ZBA's action in revoking a

previously issued building permit was both arbitrary and

unreasonable.  Moreover, plaintiffs say the ZBA's action amounts

to intentional and purposeful discrimination against PPNNE (and

its patients) based upon its engagement in constitutionally

protected activities (e.g., facilitating a woman's consideration

and acquisition of abortion services, contraception services, and

family planning services, as well as its general advocacy of

reproductive rights).

Plaintiffs' application for preliminary injunctive relief was heard on April 20, 2001.

Based upon the affidavits and materials filed, as well as the representations of counsel during the course of the hearing, the following pertinent facts were developed. The Owner obtained a variance under the applicable city zoning ordinance which allowed the building at issue (formerly used as an auto parts store) to be used for "medical offices." The city contends, however, that it was under the impression, in granting the variance, that the permitted "medical office" use would involve two to three "general practitioners" and associated staff. It further contends that a restriction to that effect is necessarily implicit in the variance actually issued. (On its face, the variance is not conditional.) After obtaining the variance, the Owner entered into a lease with PPNNE for most of the building's space. PPNNE and the Owner also entered into an agreement to fit the leased space for a medical office use.

Building plans were submitted to the Building Commissioner, who, after reviewing the plans and insuring compliance with the

2

medical office use authorized by the variance, issued a building permit. After obtaining the building permit, the Owner and PPNNE made arrangements to finance and complete the necessary construction work.

Several months later, in the fall of 2000, PPNNE publicly announced its intent to occupy the building and provide medical services to the residents of greater Manchester, including family planning and, at some future date, abortion services. That announcement provoked some public opposition to Planned Parenthood's use of the building, and various people sought relief from the Zoning Board of Adjustment. By a divided vote, the ZBA revoked the building permit on January 3, 2001, after hearing from interested parties and members of the public. Plaintiffs then filed this suit seeking to remedy what they see as an unconstitutional deprivation of federal rights under color of state law.[1]

---

[1] The defendants' motions to dismiss or stay plaintiffs' action under various abstention doctrines were orally denied at the April 20 hearing, though the court advised that it will likely not exercise supplemental jurisdiction over plaintiffs' strictly state law zoning claims. See, e.g., 28 U.S.C. § 1367(c)(1) and (4); Raskiewicz v. Town of New Boston, 754 F.2d 38, 44 (1st Cir. 1985). That issue, as well as requested intervenor status, will be addressed in a separate order. For

3

## Discussion

The first point of significance is that the ZBA's reasons for revoking the building permit are unknown, because they are undisclosed. The board made no findings of fact and provided no explanation for revoking the permit, either orally on the record (in the minutes), or by written decision.[2] And, the city chose not to put on any evidence of the ZBA's reasoning during the course of the April 20 hearing; no ZBA members testified as to the actual reason or reasons for the decision. Instead, the city

---

now it is sufficient to note that no grounds exist warranting abstention and plaintiffs are entitled to proceed with their federal claims. See, e.g., Planned Parenthood League of Massachusetts v. Bellotti, 868 F.2d 459, 467 (1st Cir. 1989) (abstention improper where federal claims can be adjudicated without encroaching on principles of federalism and comity).

[2] The city attorney suggests that under state law the ZBA is not required to make findings, provide rulings of law, or in any way explain its decisions, absent a request by a party. And, of course, strictly speaking the ZBA is not required to explain its decision here. However, it would seem exceedingly difficult for it to meet its burden of demonstrating that the building permit was revoked for legitimate (or at least constitutionally permissible) reasons, when it chooses to stand mute in the face of credible and supported allegations that the permit was revoked based upon the identity of the property's lessee, PPNNE, its advocacy role with respect to abortion, contraception, and family planning services, and its intent to assist women in considering and obtaining such services. See, e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977).

relied upon the administrative record in the case, that is, the minutes of the January 3, 2001, ZBA meeting.

The next point of significance is (and the city agrees) that the _variance_ permitting the Owner to use the property in question as a medical office remains in effect, unmodified. So, even accepting, for the moment, the city's perception that the extant and valid variance implicitly comes with restrictions – i.e., that the medical office use is limited to a "general medical practice," consisting of two to three physicians and associated staff – it was conceded (candidly and necessarily) by the city's counsel that the refitting plans submitted by the Owner and PPNNE to the Building Commissioner describe work that, when completed, will be entirely consistent with the medical office use authorized by the variance, _as the city itself construes the variance_.

The city's counsel also agreed, necessarily and correctly, that the variance sought for the medical office use could not have been lawfully or constitutionally denied based merely upon the identity of the Owner's tenant, Planned Parenthood of

5

Northern New England, nor on the basis that abortion services would be provided as part of the "general practice" of medicine on the site (whether by PPNNE or a "general practice physician"). The minutes of the January 3, 2000, ZBA meeting suggest some confusion on the part of ZBA members as to the effect of constitutional limits on their municipal authority – but it is by now clear that personal opposition to abortion or personal disapproval of Planned Parenthood's activities cannot serve as a lawful basis for denying a variance or making other zoning decisions. See, e.g., Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d 328, 331 n.5 (5th Cir. 1981); Dailey v. City of Lawton, Okl., 425 F.2d 1037, 1039 (10th Cir. 1970).

In determining whether to issue preliminary injunctive relief, courts in this circuit are required to consider the following factors:

1. whether plaintiffs are likely to succeed on the merits;

2. whether in the absence of injunctive relief plaintiff would suffer irreparable injury;

3. whether the balance of harms militates in favor of granting injunctive relief (that is, whether withholding injunctive relief will cause more harm to

6

plaintiffs than granting injunctive relief will cause to defendants); and

4.   whether the public interest lies in favor of granting or withholding injunctive relief under the circumstances.

See Planned Parenthood League of Massachusetts v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981).


I.   Likelihood of Success on the Merits

Plaintiffs have met their burden of establishing likelihood of success on the merits. That is, they will likely be able to prove at trial that the decision to revoke the previously issued building permit was motivated by discriminatory animus toward PPNNE, as lessee, based upon the nature of the constitutionality protected activity in which they intend to engage (facilitating consideration and acquisition of abortion, contraception, and family planning services by their patients).


As noted, the ZBA chose to give no reasons for revoking the permit at its meeting or since. Moreover, the record provides no apparent valid reasons for the revocation. What is apparent from the record is that significant numbers of people expressed

7

personal objection to Planned Parenthood's location in the area due to their general opposition to abortion, contraception, or family planning activities. Just as it is clearly constitutionally impermissible for the ZBA to premise its decision upon board members' personal, philosophical, moral, religious, and/or political opposition to these protected activities, acquiescence in public opposition of a like nature is equally impermissible. See Deerfield Medical Center, 661 F.2d at 337; West Side Women's Services, Inc. v. City of Cleveland, 573 F. Supp. 504, 523 (N.D. Ohio 1983) ("A municipality has no legitimate interest in shielding certain members of a community from constitutionally-protected activities which they find offensive on personal, moral, or even religious grounds."); cf. Dailey v. City of Lawton, 425 F.2d at 1039.

To be sure, no ZBA member affirmatively disclosed a constitutionally impermissible basis for revoking the permit, but "if proof of a civil right[s] violation depends on an open statement by an official of an intent to discriminate, the Fourteenth Amendment offers little solace to those seeking its protection. [I]t is enough for the complaining parties to show

8

that the local officials are effectuating the discriminatory designs of private individuals." <u>Dailey v. City of Lawton</u>, 425 F.2d at 1039 (citations omitted); <u>see</u> <u>Snowden v. Hughes</u>, 321 U.S. 1, 8 (1944) (intentional or purposeful discrimination may appear on face of action taken with respect to particular class or person).

It may be that the city will offer evidence at trial suggesting that other, legitimate, reasons motivated the revocation decision. <u>See</u> <u>Mt. Healthy City School Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977). But, insufficient evidence of a legitimate purpose was presented at the hearing on plaintiffs' application for preliminary relief. The only arguably relevant evidence the city's counsel could point to was the minutes of the January 3, 2000, ZBA meeting consisting of a few vague questions and statements made by one or two board members suggesting the city had been "misled" when it first issued the variance. However, it is not clear what was meant by those cryptic comments. If the issuing authority was "misled" as to the identity of the prospective tenant who would be providing medical services at the site, that identity would have been

irrelevant to any impartial decision to issue or deny a variance for a medical use of the property. And, that the proposed tenant intended to engage in constitutionally protected activities in providing medical services — such as providing abortion and contraception counseling and services — would have been equally irrelevant.

If the "misrepresentation" alluded to by the ZBA involved some potential but unidentified collateral impact of PPNNE's actual intended use of the property, then the record is at best undeveloped. The board does not appear to have seriously considered such factors, and certainly did not have any substantive evidence regarding such factors before it. Nor did it make any findings (or at least disclosed no findings) with respect to such issues.

Counsel for the city did gamely argue that the board members probably meant (and implicitly "found") that the nature of the "medical practice" to be carried out at the site was misrepresented and, consequently, the variance was procured by misrepresentation, or even fraud — i.e., the variance was granted

10

based on the Owner's agent's representation that the building would be used as a "general medical practice," while the actual intended use is significantly different because a medical practice is not "general" if it focuses on gynecology and obstetrics. Under that rationale, a "medical office" for podiatrists, dermatologists, pediatricians, or any medical group other than perhaps a general family practice, would probably be equally violative of the implicit "general practice" limitation.[3]

The city's argument is not very compelling, and is substantially undermined by the fact that the board left the variance intact when it revoked the building permit, which simply authorizes construction conceded by the city to be entirely consistent with a medical use allowed by the variance, even as the ZBA itself construes the variance. It is additionally instructive, perhaps even dispositive as to preliminary relief, to note that the city's Building Commissioner, who has obvious professional expertise in the matter, testified forthrightly before the ZBA that the building permit authorized construction

_____

[3]"General practice" is apparently nowhere defined in the zoning ordinance.

11

of facilities that were entirely consistent with the variance permitting a medical use of the building.

Accordingly, at this stage, and on this record, the conclusion is nearly inescapable that plaintiffs are likely to prove at trial that the actual factor motivating the ZBA to revoke the Owner's building permit was not any legitimate zoning, or unlitigated "intensity of use" concern, or any inconsistency between the planned construction and the permissible use, but, rather, was its antipathy for the abortion and contraception services PPNNE will provide, or, its acquiescence in the expression of public antipathy for such constitutionally protected activity.  In either event, revocation of the permit based upon such considerations operates to deprive the Owner and PPNNE (and its patients) of their constitutionally protected freedoms.  See Deerfield Medical Center, 661 F.2d at 336; P.L.S. Partners, Women's Medical Center of Rhode Island, Inc. v. City of Cranston, 696 F. Supp. 788, 796-97 (D.R.I. 1988) (citing cases); see also generally Family Planning Clinic, Inc. v. City of Cleveland, 594 F. Supp. 1410 (N.D. Ohio 1984) (zoning ordinance disallowing clinic operated primarily for abortions in residence-

office district unconstitutionally interfered with woman's right to seek and obtain abortion and did not survive constitutional scrutiny); West Side Women's Services, Inc. v. City of Cleveland, 573 F. Supp. 504 (N.D. Ohio 1983) (permitting medical offices, but not abortion clinics, to operate in business district is not sustainable). Such decisions, taken under color of state law, are clearly unlawful and actionable. See 42 U.S.C. § 1983.

II. Irreparable Injury

The ZBA's decision to revoke the building permit significantly impacts upon plaintiffs' fundamental and constitutionally protected rights, and the burden imposed is more than de minimus. By revoking the permit, the ZBA halted construction of medical offices which are entirely consistent with a currently authorized use of the building pursuant to the existing variance – even as the city perceives and construes that variance.

The ZBA's decision to revoke the building permit unquestionably results in irreparable injury to plaintiffs, as well as PPNNE's patients. By revoking the permit, the ZBA

13

significantly interrupted and delayed PPNNE's patients' ability to consider and obtain family planning, contraceptive, and at some point, abortion services, by delaying PPNNE's (as yet) legitimate occupancy of the building. Because the burden imposed on plaintiffs' fundamental rights is more than de minimus, strict scrutiny applies. See Deerfield Medical Center, 661 F.2d at 335; Family Planning Clinic, Inc., 594 F. Supp. at 1415.

That is, to sustain its action the ZBA must demonstrate that the infringement represented by the revocation of the building permit is justified by a "compelling governmental interest," and, that the burden it has imposed is the least restrictive alternative means of serving that compelling interest. See, e.g., Deerfield Medical Center, 661 F.2d at 334. The ZBA has not yet attempted to do so, and the injury to plaintiffs (if defendants do not meet their very heavy burden at trial) is and will continue to be irreparable. See generally Elrod v. Burns, 427 U.S. 347, 373 (1976) (loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying preliminary injunctive relief); P.L.S. Partners, Women's Medical Center of Rhode Island, Inc. v. City of Cranston,

14

696 F.Supp. 788 (official action having the potential to frustrate or delay a woman's abortion decision constitutes irreparable injury); West Side Women's Services, Inc. v. City of Cleveland, 573 F.Supp. at 518 ("The question is not whether the activity may be engaged in elsewhere, but whether it was constitutional to restrict it in the manner chosen by defendants.")

A limited right to abortion is, of course, a fundamental and constitutionally protected right. Roe v. Wade, 410 U.S. 113 (1973). Every day PPNNE is prevented from occupying its new facility increases the likelihood that abortion or contraception or family planning patients will have to seek alternative care either in hospital settings, at considerable expense, or by traveling to other facilities. The ZBA's act revoking the building permit imposes a non-de minimus burden on plaintiffs' constitutionally protected rights, because its official action "ha[s] the potential to frustrate or delay a woman's abortion decision." See P.L.S. Partners, Women's Medical Center of Rhode Island v. City of Cranston, 696 F. Supp. at 796; Planned Parenthood of Rhode Island v. Board of Medical Review, 598

15

F.Supp. 625, 630 (D.R.I. 1984). That burden, alone, constitutes "irreparable injury." Elrod v. Burns, 427 U.S. at 373.

Absent injunctive relief, plaintiffs' protected constitutional rights would continue to be abridged and plaintiffs (and their patients) will continue to suffer irreparable injury.

III. Balancing of the Equities

In this case, balancing the harms likely to flow from granting or withholding preliminary injunctive relief is an exercise that militates strongly in favor of granting injunctive relief. Allowing construction of medical offices on the proposed site, according to the plans previously approved, will inflict no harm at all upon the city. The city, by its own concession, could have no reasonable objection to the Owner leasing the space at issue to a "general medical practice" group consisting of two to three physicians and associated staff. Since the refitting plans are entirely consistent with that use, when the construction is completed the building will be suitable for the very use the ZBA says it intended.

16

So, worst case, if the subject property is refitted to accommodate a medical office use as permitted even under the ZBA's view, the Owner will be in a position to let the space as medical offices, and its tenant(s) will be able to use the space appropriately. Therefore, the city cannot possibly be harmed by an injunction allowing plaintiffs to go forward with their construction, as authorized by the Building Commissioner. Whether the actual future use by PPNNE is or is not consistent with the variance is a question entirely different from whether the approved construction will cause any harm to the city if it is completed.

On the other hand, absent injunctive relief, plaintiffs will suffer a number of irreparable harms. First and foremost their constitutionally protected rights will continue to be denied with each passing day of unjustified delay. Secondly, the plaintiffs have invested considerable sums of money in financing and contracting for the refurbishment construction. While, ordinarily, economic losses are recoverable in actions at law (and therefore do not constitute irreparable injury), in this case it is highly unlikely that any economic losses will be

17

recoverable as a practical matter.  As the Owner's counsel persuasively argued, it is likely that individual Zoning Board of Adjustment members would be immune from personal liability for money damages, and the city is probably not amenable to a suit for money damages, given the probable absence of a custom, practice, or policy encouraging the deprivation of constitutional rights by ZBA members.  But see P.L.S. Partners, Women's Medical Center of Rhode Island, Inc. v. City of Cranston, 696 F. Supp. at 799. (municipal building inspector acting under color of state law held liable for monetary damages under 42 U.S.C. § 1983 when he required proposed outpatient abortion facility to obtain special use permit to operate as hospital).

IV.   The Public Interest

The public interest clearly militates in favor of issuing injunctive relief in this case.  The public interest never favors governmental action that is arbitrary, unreasonable, and motivated by personal animus toward groups or individuals based upon their exercise of constitutionally protected freedoms.  Given that plaintiffs are likely to succeed on the merits in establishing the constitutionally impermissible motive and

18

purpose driving the ZBA's revocation of the previously issued building permit, the public interest clearly lies in favor of bringing the potential harm flowing from those likely constitutional violations to an immediate and abrupt halt.

The city has articulated no public policy that would favor the denial of injunctive relief in this case. As noted above, at worst, issuing injunctive relief will permit the Owner and PPNNE to fit out the building in a manner consistent with its use as a medical office in a manner entirely consistent with even the ZBA's asserted version of what medical use is permissible. Therefore, common sense militates in favor of preliminarily alleviating the very real economic harm being inflicted upon plaintiffs, ending the apparent threat to plaintiffs' constitutional rights, and permitting construction to fit out the building for medical office use at the earliest, and, therefore, at the least costly, point. Plaintiffs have, of course, readily acknowledged that the burden of loss in continuing to fund the construction project is theirs, should their occupancy or use later be denied or restricted for lawful and non-discriminatory reasons.

## Conclusion

Based upon the affidavits and materials submitted by all parties (including the proposed intervenors), as well as the arguments, proffers, and statements by counsel during the course of the hearing on April 20, 2001, the court finds that plaintiffs are likely to succeed in proving that the ZBA acted unconstitutionally when it revoked the building permit because it did so based upon a discriminatory animus, intending thereby to impose a significant obstacle in the path of the plaintiffs' provision of abortion counseling and services, contraceptive counseling and services, and family planning medical services. Moreover, plaintiffs are likely to succeed in demonstrating that no valid justification exists for the board's action, no compelling state interest is served by the ZBA's revocation of the building permit, and revocation of the building permit is not, in any event, the least restrictive available alternative to vindicate any legitimate state interest that may be at issue here. The court also finds that plaintiffs are suffering and will continue to suffer irreparable injury absent the issuance of injunctive relief. The balance of equities lies in favor of issuing preliminary injunctive relief, particularly in light of

20

the fact that the city will not be harmed in any way if the construction is completed and the building is made useful for a "medical office," particularly given that the city concedes that the construction, when completed, will indeed be consistent with even its own view of an authorized "medical office" use. Finally, the court finds that public policy militates strongly in favor of granting preliminary injunctive relief, and that no public policy considerations militate at all in favor of denying injunctive relief in this case.

Accordingly, the City of Manchester, its Zoning Board of Adjustment, their employees, agents, servants, attorneys, and anyone acting for or in concert with them, are hereby preliminary enjoined from:

1. revoking the building permit issued to the plaintiff Owner;

2. seeking to enforce any cease and desist order issued relative to construction carried out pursuant to the building permit previously issued to the Owner;

3. interfering with or frustrating completion of the construction project authorized by the previously issued building permit; and

4.   taking any enforcement action whatsoever based upon or related to the ZBA's revocation of the previously issue building permit.


**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 27, 2001

cc:   Lucy C. Hodder, Esq.
      Roger Evans, Esq.
      Robert E. Murphy, Jr., Esq.
      Daniel D. Muller, Jr., Esq.
      Stephen F. Queeney, Esq.
      Richard B. McNamara, Esq.